IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.: 18-cv-1381

JOHN M. ASKINS and SHELLEEN ASKINS,

   Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.

   Defendants.

---

### COMPLAINT AND JURY DEMAND
---

Plaintiffs, John M. Askins and Shelleen Askins (collectively, "Plaintiffs"), submit the following Complaint and Jury Demand against the Defendant, American Family Mutual Insurance Company, S.I. (hereinafter "AFI"), stating as follows:

### I. PARTIES

1. Shelleen Askins is a resident of the State of Colorado, who was a named insured under a policy issued by AFI, when a loss occurred on March 22, 2017.

2. John M. Askins is a resident of the State of Colorado, who was a named insured under a policy issued by AFI, when a loss occurred on March 22, 2017.

3. Plaintiffs, at all times relevant, were residents of the State of Colorado.

4. At all times relevant, AFI insured property located at 6984 U.S. Highway 285, Morrison, CO 80465. This is hereafter referred to as "the Property."

## II. JURISDICTION AND VENUE

5. The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states. The amount in controversy exceeds $75,000.

6. AFI is a foreign corporation who is a citizen of the State of Wisconsin and whose registered agent is The Corporation Company.

7. Venue is proper because the Property and dispute involving the Property and most material actions occurred within the State of Colorado.

8. This Court has jurisdiction and venue is proper pursuant to C.R.C.P. 98.

## III. FACTUAL ALLEGATIONS

9. Plaintiffs incorporate by reference the allegations set forth above in the preceding paragraphs as if set forth herein.

10. Andrew Askins is the son of Plaintiffs. He was said by AFI to have started a fire through use of fireworks. This was not true. It was not alleged that Andrew Askins intended any loss.

11. AFI insured John M. Askins and Shelleen Askins under a policy of insurance number 05-BM0459-01.

12. Said policy was effective on the date of loss, which was March 22, 2017.

13. This policy provided coverage for dwelling coverage for the Property with limits of $297,400.

14. This policy provided coverage for personal property for the Property on premises in the amount of $223,100.

15. The policy issued by AFI states that:

16. Residence premises as shown in the Declarations means:
    a. one-family dwelling you own and reside in. This includes related private structures and grounds at that location;
    b. two family dwelling you own when your household resides in one of the units. This includes related private structures and grounds at that location; or
    c. townhouse you own and reside in. This includes only the related private structures and grounds your household occupies solely for your residential purposes at that location.

16. Said policy further provides that:

    Coverage A- Dwelling. We cover your dwelling on the residence premises. This includes:
    1. Built-in components.
    2. these items if they are attached to your dwelling:
       a. fixtures;
       b. structures; and
       c. wall-to-wall carpet.
    3. construction materials:
       a. if on the residence premises; and
       b. for the sole purpose of use in modifying your dwelling or structure.

17. The policy further provides that:

    Coverage B - Personal Property.
    1. Property Covered. We cover personal property owned or used by an insured anywhere in the world. At your request after a loss, and if not insured by the owner, we will cover personal property owned by:
       a. others while it is on the part of the residence premises occupied exclusively by an insured; or
       b. a guest or domestic employee while it is in a residence occupied by an insured.
       Personal property includes items such as storage sheds, yard items, or landscaping materials that are not structures or parts of a structure. It includes any curtains, drapes, or other window or door treatments, whether or· not installed.

3

18. On or about March 22, 2017, a fire occurred at the insured dwelling, causing losses to Plaintiffs.

19. On this same day, Plaintiffs suffered losses covered by their policy with AFI under Dwelling and under Personal Property.

20. Plaintiffs submitted their claims to AFI. AFI neither accepted nor denied the claim, but issued a letter on April 17, 2017, which states in part, "We are advising you at this time that there is a question whether coverage under the policy mentioned above will apply for this loss." This letter from AFI stated in part ("This letter"):

*EXCLUSIONS - SECTION I*

*Part B* - *The following Exclusions apply to all Coverage in Section I.*

***We*** *do not cover loss consisting of, or caused directly or indirectly by any of the following Exclusions. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These Exclusions apply even if the loss event results in widespread damage. These Exclusions apply whether the loss is caused by natural, man-made, or animal forces. These Exclusions apply whether the loss occurs as the result of one or any combination of Exclusions:*

21. This letter provided in pertinent part, "The Company will proceed with the investigation of this claim as is necessary or advisable."

22. At all times, AFI had a duty to fully, promptly, and reasonably investigate Plaintiffs' claims and reasonably know Plaintiffs' policy and interpret Plaintiffs' policy reasonably.

23. This letter further provides:

*Intentional Act.*

*This means any loss arising out of any act any **insured** commits or conspires to commit with the intent to cause any loss even if the actual loss is different from what was intended or expected.*

*In the event of such loss, no **insured** is entitled to coverage, even an **insured** that did not commit or conspire to commit the act causing the loss.*

24. On March 5, 2018, AFI denied Plaintiffs' claims arising from the loss on March 22, 2017 in a letter which quoted the policy in part:

4

*DEFINITIONS*

Words in bold type have these defined meanings:

8. ***Insured***:
a. *This means:*
   (1) ***you***; or
   (2) *a **household** member who is:*
       (a) *a **relative**; or*
       (b) *under the age of 21 and in **your** care or the care of a **household** member who is a **relative**.*

*PERILS - SECTION I*

*Coverage A – Dwelling and Dwelling Extension.*

***We*** *cover sudden and accidental direct physical loss to property described in Coverage A, unless **we** exclude the loss in this policy.*

*EXCLUSIONS - SECTION I*

<u>Part B</u> - *The following Exclusions apply to all Coverage in Section I.*

***We*** *do not cover loss consisting of, or caused directly or indirectly by any of the following Exclusions. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These Exclusions apply even if the loss event results in widespread damage. These Exclusions apply whether the loss is caused by natural, man-made, or animal forces. These Exclusions apply whether the loss occurs as the result of one or any combination of Exclusions:*

4. *Illegal Act.*

*This means any loss arising out of a violation of any criminal law for which any **insured**:*

a. *is convicted or adjudicated; or*
b. *due to mental incapacity, disease, or defect is either not convicted or convicted of a lesser charge.*

*This Exclusion applies even if an **insured** lacks the mental capacity to govern his or her conduct.*

25. AFI stated on March 5, 2018:

Based on the above information we are denying coverage for the damages caused by the fire. Please be assured that we have given the fullest consideration to your claim. We regret that we could not be of assistance in this matter.

26. Subsequently, and at all times relevant, Plaintiffs informed AFI that Andrew Askins had not been convicted or adjudicated in violation of any criminal law from which the loss on March 22, 2017.

5

27.     Rather, Andrew Askins was involved in a diversion program pursuant to C.R.S. § 18-1.3-102 which is generally described as a deferred judgment.

28.     At all times relevant prior to the filing of this lawsuit, AFI knew or should have known in the exercise of any reasonable standard of care that Andrew Askins was neither convicted nor adjudicated to have violated any criminal law.

29.     Andrew Askins was not convicted in connection with the loss of March 22, 2017.

30.     Andrew Askins was not adjudicated to be in violation of any criminal law in connection with a loss arising out of the occurrence on March 22, 2017.

31.     Andrew Askins entered into a plea bargain which resulted in the following actions being taken pursuant to Colorado's deferred judgment statute C.R.S. § 18-1.3-102:

   a.     Andrew Askins petitioned to enter a plea of guilty to firing woods or prairie in violation of C.R.S. § 18-3-109(1), (2), (a) as part of a stipulation.  At the time of stipulation, the District Attorney agreed that there would be deferred judgment and possible sentencing in a future stipulation.

   b.     The People dismissed counts 1 and 2 consisting of second-degree arson under C.R.S. § 18-4-103(1).

   c.     The District Attorney for the County of Jefferson, State of Colorado, and Andrew Michael Askins entered into a stipulation dated January 12, 2018.

   d.     This stipulation provides in part that upon breach of deferred sentencing stipulation and hearing, the court may determine whether a breach of condition has occurred and the People may apply for entry of judgment and imposition of sentence.

e. Said stipulation provides that upon completion of supervision of the diversion program in the First Judicial District of the County of Jefferson, State of Colorado, any further diversion will be on an unsupervised basis.

32. On or about January 16, 2018, a deferred judgment involving Andrew Askins was granted and ordered by the court as approved and adopted as a stipulation.

33. On January 16, 2018, the court for the First Judicial District, County of Jefferson, State of Colorado, ordered that violation of the stipulation involving Andrew Askins relating to deferred judgment could result in entry of judgment and sentence.

34. On January 16, 2018, this same court for the First Judicial District entered an order which states that on January 16, 2022, Andrew Askins' plea of guilty will be withdrawn and charges against him dismissed pursuant to deferred judgment. C.R.S. § 18-103-102 entitled "Deferred Sentencing of Defendant" reads in pertinent part:

> In a case where the defendant has entered a plea of guilty, the court accepting the plea, has the power, with the written consent of the defendant or his or her attorney of record and the district attorney, to continue the case for the purpose of entering judgment and sentencing upon a plea of guilty for a period not to exceed four years for a felony or two years for a misdemeanor or traffic offense.

35. C.R.S. § 18-1.3-102 provides that:

> In any case in which the defendant has entered a plea of guilty, the court accepting the plea has the power, with the written consent of the defendant and his or her attorney of record and the district attorney, **to continue the case for the purpose of entering judgment and sentence** upon a plea of guilty…" [emphasis added].

36. No court entered judgment for sentence upon the plea of guilty of Andrew Askins.

37. C.R.S. § 18-1.3-102 provides in part that:

> Prior to entry of a plea of guilty to be followed by deferred judgment and sentence, the district attorney, in the course of plea discussion as provided in §§

7

   16-7-301 and 17-3-302, C.R.S, is authorized to enter into a written stipulation, to be signed by the defendant and the defendant's attorney of record, and the district attorney, under which the defendant is obligated to adhere to such stipulation.

38.  This occurred in connection with Andrew Askins.

39.  The District Court for the County of Jefferson, State of Colorado, lacked authority to impose a deferred judgment outside of the deferred judgment statute's limits. C.R.S. § 18-1.3-102 and *People v. Carbajal*, 198 P.3d 102, 105 (Colo.2008).

40.  The policy issued by AFI does not define "conviction."

41.  The plain and ordinary meaning of "conviction" is found in dictionaries which include a definition as "a formal declaration that someone is guilty of a criminal offense, made by a verdict of a jury or a decision of a judge in a court of law."

42.  The term "adjudication" is not defined in the policy of AFI.

43.  The plain and ordinary meaning of "adjudication" can be found in dictionaries which include a definition as "the act or process of adjudicating a dispute" or "a judicial decision or sentence."

44.  How the term "conviction" is defined at all times relevant, the policy issued by AFI was subject to Colorado law and supplemented by Colorado law.

45.  At all times relevant, Colorado law provided that a sentence of probation under deferred judgment was not an adjudication or conviction. *People v. Bowman*, 669 P.2d 1369, 1374-75 (Colo.1983). Colorado approves of the decision of *Davis v. Alaska*, 415 U.S. 308 (U.S. 1974), where a juvenile had not been adjudicated delinquent but merely charged with an offense and involved in an informal diversion program. *People v. Bowman*, supra., 669 P.2d at 1380.

46. In connection with insurance, Colorado law provides that the "Slayer" statute does not apply absent a conviction. *Lunsford v. Western States Life Ins.*, 908 P.2d 79 (Colo.1995).

47. In connection with discussing <u>res judicata</u>, the term means "a thing adjudicated" and an "issue which has been definitively settled by judicial decision." See <u>Black's Law Dictionary</u> 8th Ed., 2004 pp. 1336-37; *Pruden v. Plasser American Corp.*, 612 S.E. 2d, 738, 742 (VA App. 2005).

48. In connection with the case of *Kissleman v. American Family Mutual Ins. Co.*, 212 WL 17769368 (Colo. Dist. Court), the court discussed the meaning of "adjudication" as being fully and finally determined.

49. Similarly, in the case of *Helca Minex Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083 (Colo.1991), the court defined "adjudication" as a full and final determination.

50. In *People v. Rodriguez*, 914 P.2d 230, 248-50 (Colo.1986), the court made it clear that collateral estoppel required an issue be litigated and necessarily adjudicated. "Adjudicated" was defined as a judicial determination.

51. In the case of *Hendershott v. People*, 653 P.2d 384, 394-395 (Colo.1982), the issue was whether collateral estoppel should apply in the criminal arena. The court defined "adjudicated" to mean a judicial decision that someone was sane.

52. Plaintiffs suffered covered losses under Coverage A--Structure exceeding $100,000.

53. Plaintiffs suffered covered losses under Coverage B--Personal Property believed to exceed $50,000.

9

54. Plaintiffs submitted their claims to AFI.

55. AFI neither admitted nor denied the claims until March 18, 2018.

56. Plaintiffs suffered financial hardship in having to pay for covered losses.

57. Plaintiffs suffered emotional distress and non-economic damages such as worry and anxiety resulting from the failure of AFI to provide coverage and to properly, timely, and reasonably determine their claim.

58. AFI had a duty to promptly and reasonably communicate in a clear and effective manner.

59. AFI breached the duty to promptly communicate with Plaintiffs by failing to state that they would consider a deferred judgment to be an adjudication or conviction of a crime.

60. AFI had a duty to reasonably investigate the claim, including Colorado law as it applies to their policy.

61. If AFI failed to properly research Colorado law as it applied to their policy and as a result, determined that Andrew Askins had been convicted or adjudicated of a crime. As a result of not properly finding out the law, AFI claimed that there was no coverage for the losses of Plaintiffs.

## IV.  FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

62. Plaintiffs incorporate by reference the allegations set forth above in the preceding paragraphs as if set forth herein.

63. Plaintiffs submitted compensable claims to AFI under the terms and conditions of their policy. Claims included a barn rebuild at an approximate cost of eighty-nine thousand dollars ($89,000), contents at a cost of approximately forty-three thousand dollars ($43,000.00)

ACV or actual value and ninety-one thousand dollars ($91,000.00) RCV or recoverable depreciation included. Also Plaintiffs submitted claims for smoke damage costing approximately ten thousand dollars ($10,000.00).

64. Plaintiffs complied with all conditions precedent.

65. AFI breached the terms and conditions of its policy and contract with Plaintiffs by not paying the claims of Plaintiffs.

66. Plaintiffs seek amounts due under the contract plus pre-judgment interest and costs.

## V. SECOND CLAIM FOR RELIEF
### (Unreasonable Delay and Denial Pursuant to C.R.S. § 10-3-1115 and 1116)

67. Plaintiffs incorporate by reference the allegations set forth above in the preceding paragraphs as if set forth herein.

68. Pursuant to C.R.S § 10-3-1115 and 1116, AFI had a duty to act reasonably, to not act in a manner that caused unreasonable delay or unreasonable denial.

69. AFI unreasonably delayed and denied Plaintiffs' claim in violation of said statutes, (Plaintiffs incorporate paragraph 71. herein to this paragraph 69.) thereby entitling Plaintiffs to double damages and attorneys' fees in addition to post-judgment interest and costs.

## VI. THIRD CLAIM FOR RELIEF
### (Bad Faith)

70. Plaintiffs incorporate by reference the allegations set forth above in the preceding paragraphs as if set forth herein.

71. AFI acted unreasonably and knew or should have known that it was acting unreasonably when it breached its duties in acting unreasonably by the following acts, some of

which are considered unfair claims settlement practices pursuant to C.R.S. § 10-3-1104(1)(h): (a) unreasonably failing to pay Plaintiff's claims; (b) unreasonably failing to properly interpret its own policy; (c) unreasonably failing to make payments in a reasonable and timely manner; (d) misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue (C.R.S. § 10-3-1104(1)(h)(I)) (e) refusing to pay claims without conducting a reasonable investigation based on all available information and policy terms (C.R.S. § 10-3-1104(1)(h)(IV)); (f) not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims of which liability has become reasonably clear (C.R.S. § 10-3-1104(1)(h)(VII)); (g) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds (C.R.S. § 10-3-1104(1)(h)(VII); (h) failing to act reasonably in adjustment and resolution of the claims.

72.  Plaintiffs seek damages caused by bad faith conduct of AFI and prejudgment interest and costs.  They reserve the right to seek exemplary damages.

WHEREFORE, Plaintiff prays for compensatory damages on all claims, pre-judgment interest as is allowed on all claims (except for unreasonable delay), and post-judgment on all claims, double damages, attorney's fees, costs, and expenses, and for such other and further relief as the Court deems proper.

## JURY DEMAND

PLAINTIFFS DEMAND A TRIAL BY A JURY OF SIX (6).

Dated: June 5, 2018

Respectfully submitted,

THE FRANKL LAW FIRM, P.C.

*s/ Keith Frankl*
Keith Frankl
7400 E. Orchard Road, Suite 225-S
Greenwood Village, CO  80111
Telephone:  (303) 300-2029
Fax:  (303) 300-2059
Email:  kfrankl@frankllawfirm.com
*Attorneys for Plaintiff*

Plaintiffs' Address:
John M. Askins
6984 US Highway 285
Morrison CO 80465

Shelley Askins
P.O. Box 814
Conifer CO 80433